IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DONALD KAY HAM | ) | |
| c/o 14714 MAIN STREET | ) | Case No. _____cv_____ |
| UPPER MARLBORO, MD 20772, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEPHEN T. AYERS | ) | |
| ARCHITECT OF THE CAPITOL | ) | |
| UNITED STATES SENATE | ) | |
| E. CAPITOL & FIRST ST, NW | ) | |
| WASHINGTON, DC, 20510 | ) | |
| | ) | |
| OFFICE OF THE | ) | |
| ARCHITECT OF THE CAPITOL | ) | |
| UNITED STATES SENATE | ) | |
| E. CAPITOL & FIRST ST, NW | ) | |
| WASHINGTON, DC, 20510 | ) | |
| | ) | |
| serve on: | ) | |
| | ) | |
| JASON BALTIMORE, ESQUIRE | ) | |
| OFFICE OF GENERAL COUNSEL | ) | |
| ARCHITECT OF THE CAPITOL | ) | |
| 2ND & D STREETS SW, ROOM H2-265A | ) | |
| WASHINGTON, DC 20515 | ) | |
| | ) | |
| serve on: | ) | |
| | ) | |
| LORETTA E. LYNCH | ) | |
| ATTORNEY GENERAL OF | ) | |
| THE UNITED STATES | ) | |
| THE DEPARTMENT OF JUSTICE | ) | |
| 950 PENNSYLVANIA AVE., NW | ) | |
| WASHINGTON, DC 20530-0001 | ) | |
| | ) | |

serve on:                                    )
                                             )
VINCENT H. COHEN, JR.                        )
UNITED STATES ATTORNEY                       )
JUDICIARY CENTER                             )
555 FOURTH STREET, NW                        )
WASHINGTON, DC 20530                         )

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff, Donald Ham, by and through his undersigned counsel, and for his complaint states the following:

## JURISDICTION AND VENUE

1. Jurisdiction and venue are based on the Congressional Accountability Act of 1995, 2 U.S.C. §§ 1301 - 1438  ("CAA"), 28 U.S.C. § 1331, and 28 U.S.C. § 1391.

2. Sections 1404 and 1408(a) of the CAA permit covered employees to initiate civil actions to enforce their rights under the CAA in the federal district court in the district of employment or in the District of Columbia.

3. Venue is appropriate pursuant to 28 U.S.C. § 1391 because the Defendant is located in the District of Columbia and all of the events or omissions giving rise to the claims occurred in or about the District of Columbia.

## PARTIES

4. Plaintiff, Donald Kay Ham ("Ham" or "Plaintiff"), a 61 year old African American, is a

resident of the State of Maryland, was employed by the Architect of the Capitol ("AOC"), in the

District of Columbia, for approximately 22 years, between November 1, 1991 and July 31, 2015.

5. Plaintiff is a covered employee as that term is defined by §§ 1301(4), and 1301(5) of the CAA.

6. Plaintiff is an individual with a disability within the meaning of the ADA.  *See* 42 U.S.C. §

12102; 28 C.F.R. § 36.104.

7. Plaintiff suffers from several medically-determined physical impairments which substantially

limit one or more of his major life functions.

8. Plaintiff suffers from Asthma, Hypertension, High Blood Pressure, Sickle Cell Hemoglobin C,

Aortic Valve Regurgitation, Sleep Apnea, Borderline Enlarged Heart, Osteoarthritis Knees, and

Breathing Impairment NOS.

9. The impairments of Plaintiff's major life functions include but are not limited to breathing,

strenuous manual tasks, walking long distances, standing, lifting, and bending.

10. Pursuant to § 1408(b) of the CAA, Defendant is the Office of the Architect of the Capitol

("AOC" or "Defendant").

11. Defendant Stephen T. Ayers is named in his official capacity as the Architect of the Capitol.

**NATURE OF THE ACTION**

12. This is a civil action to enforce the rights of a covered employee under the CAA and Title I of

the American with Disabilities Act of 1990.

13. Section 1311 of the CAA prohibits discrimination under: Title VII of the Civil Rights Act of

1954; Age Discrimination in Employment Act of 1967; the Rehabilitation Act of 1973; and Title

I of the Americans with Disabilities Act of 1990.

14. Title I of the ADA prohibits employment discrimination on the basis of disability by public and private employers alike.  42 U.S.C. § 12111, *et seq*.

15. This is an action based on unlawful discrimination in violation of § 1311 of the CAA.

16. On or about July 23, 2013, pursuant to § 1402 of the CAA, Plaintiff filed his Formal Request for Counseling with the Congressional Office of Compliance ("OOC").

17. In his Request for Formal Counseling, Plaintiff alleged violations of: Title VII of the Civil Rights Act, Americans with Disabilities Act, and Genetic Information Nondiscrimination Act regarding race, disability, color, and age.

18. On or about August 22, 2013, the counseling period ended.

19. In his Request for Formal Counseling, Plaintiff named his supervisors at AOC, Lewis W. Cole and Charlie Smith, as persons who had been involved in the acts he complained of.

20. In his Request for Formal Counseling, Plaintiff requested relief from harassment, relief from a hostile work environment, and sought reinstatement to his position as a sheet metal mechanic.

21. On or about September 11, 2013, pursuant to § 1403 of the CAA, Plaintiff filed a Request for Mediation with OOC.

22. On or about June 16, 2015, OCC notified Plaintiff that mediation ended on June 12, 2015.

23. Plaintiff filed this action within the ninety-day period required by the CAA.

**FACTUAL BACKGROUND**

24. At all times relevant to his Complaint, Plaintiff was employed by the Senate Office Buildings

Division of the Architect of the Capitol of the United States of America, in the District of Columbia.

25. Plaintiff worked in the Senate side of the United States Capitol building, the Senate office buildings, other related buildings, and on the roofs of the buildings.

26.  Plaintiff also worked on the grounds of the United States Capitol complex in the District of Columbia.

27. Plaintiff started his employment at AOC on or about November 1, 1991.

28. AOC hired Plaintiff as a sheet metal mechanic.

29. Prior to employment with AOC, Plaintiff had seven (7) years of experience as a sheet metal mechanic/worker.

30. Plaintiff had been a sheet metal apprentice for four (4) years in Maryland prior to joining AOC.

31. Before Plaintiff joined AOC, Plaintiff had been in the sheet metal workers union for seven (7) years - (Local 100).

32. In the 1991, Plaintiff was in excellent health.

33. From the beginning of his employment with AOC, Plaintiff was exposed to loud noises, particulate-laden air, dust, and he was required to carry heavy loads.

34. On a yearly basis, AOC sent Plaintiff to Washington Medical Health Associates for medial evaluation.

35. The results of Plaintiff's medical examinations at Washington Medical Health Associates were shared with AOC.

36. AOC also contracted with Professional Health Services to perform medical tests on Plaintiff and to share the information with AOC.

37. On or about October 7, 1994, Professional Health Services, Inc., informed AOC that Plaintiff had abnormal medical findings which limited his use of respirators to respirators that supplied air to his lungs.

38. AOC informed Plaintiff that a powered-air respirator would cost FIVE HUNDRED DOLLARS ($500), which Plaintiff's supervisors considered to be too expensive.

39. On or about October 17, 1997, Washington Occupational Health Associates, Inc., notified AOC that Plaintiff had "restrictive lung disease that precluded respirator use.

40. In February 1999, Plaintiff notified AOC that he was experiencing shortness of breath.

41. On or about February 13, 2004, Plaintiff successfully completed respiratory protection training at AOC.

42. On or about January 11, 2005, the Office of the Attending Physician of the U.S. Capitol Occupational Health Division notified AOC that Plaintiff had a high risk of chronic obstructive pulmonary disease ("COPD") and that Plaintiff's lungs had an effective age of *84 years old.*

43. On or about February 8, 2006, the Office of the Attending Physician of the U.S. Capitol Occupational Health Division notified AOC that Plaintiff had a high risk of COPD and that Plaintiff's lungs had an effective age of *84 years old.*

44. On or about February 15, 2006, Washington Occupational Health Associates, Inc., notified AOC that Plaintiff has restrictive changes in his lungs.

45. On or about April 27, 2007, the Office of the Attending Physician of the U.S. Capitol Occupational Health Division notified AOC that Plaintiff had a high risk of COPD and that

Plaintiff's lungs had an effective age of *84 years old.*

46. On or about May 16, 2007, Washington Occupational Health Associates, Inc., notified AOC that Plaintiff had abnormalities in his lungs, chest, and physical health.

47. On or about May 16, 2007,  Washington Occupational Health Associates, Inc., again notified AOC that Plaintiff needed a "positive pressure air purifying respirator mask" for work.

48. On or about June 11, 2007, Washington Occupational Health Associates, Inc., again notified AOC that Plaintiff was qualified for a powered air-purifying respirator.

49. On or about July 29, 2007, Washington Occupational Health Associates, Inc., again notified AOC that Plaintiff was qualified for a powered air-purifying respirator.

50.  On or about October 31, 2007, Plaintiff successfully completed respiratory protection review training at AOC.

51. On or about June 25, 2008, the Office of the Attending Physician of the U.S. Capitol Occupational Health Division notified AOC that Plaintiff had a high risk of COPD and that Plaintiff's lungs had an effective age of *84 years old.*

52. On or about July 16, 2008, Washington Occupational Health Associates, Inc., again notified AOC that Plaintiff was qualified for a powered air-purifying respirator.

53. On or about March 30, 2009, the Office of the Attending Physician of the U.S. Capitol Occupational Health Division notified AOC that Plaintiff had a high risk of COPD and that Plaintiff's lungs had an effective age of *84 years old.*

54.  On or about May 15, 2009, Plaintiff was given an outstanding performance award by Defendant.

55. On or about August 6, 2010, the Office of the Attending Physician of the U.S. Capitol

Occupational Health Division notified AOC that Plaintiff had a high risk of COPD and that

Plaintiff's lungs had an effective age of *84 years old.*

56. On or about August 24, 2010, Washington Occupational Health Associates, Inc., again

notified AOC that Plaintiff was qualified for a powered air-purifying respirator.

57. On or about July 29, 2011, the Office of the Attending Physician of the U.S. Capitol

Occupational Health Division again notified AOC that Plaintiff had a high risk of COPD and that

Plaintiff's lungs had an effective age of *84 years old.*

58. On or about September 7, 2011, Washington Occupational Health Associates, Inc., again

notified AOC that Plaintiff was qualified for a powered air-purifying respirator.

59. On or about October 5, 2011, Washington Occupational Health Associates, Inc., again

notified AOC that Plaintiff was qualified for a powered air-purifying respirator.

60. On or about January 25, 2012, the Office of the Attending Physician of the U.S. Capitol

Occupational Health Division notified AOC that Plaintiff had a high risk of COPD and that

Plaintiff's lungs had an effective age of *84 years old.*

61.  On or about April 19, 2012, Plaintiff wrote to Robert Morey, AOC Senate Office Building

Superintendent informing him that Plaintiff felt that he was being harassed by his supervisor,

Lewis Cole for allegedly not working fast enough.

62. On or about August 2, 2012, Plaintiff was instructed by his supervisor, Lewis Cole, to clean

out a HEPA vacuum cleaner by blowing out clogged dusk into a garage that was enclosed by

plastic drapes.

63. The vacuum cleaner had been used to vacuum fine particles of blown insulation that had

fallen from the ceiling.

64. On or about August 2, 2012, Plaintiff was not provided a powered air mask to clean out the HEPA vacuum cleaner referenced in paragraph 62.

65. Plaintiff was not provided with a non-powered dust mask to protect his lungs.

66. Due to the intake of dust from the vacuum cleaner, Plaintiff became dizzy and partially asphyxiated.

67. On or about August 2, 2012, Plaintiff was medivaced by ambulance to Howard University Hospital due to a fainting spell and or asthma attack due to his forced exposure to high levels of dust from the HEPA vacuum cleaner he was ordered to clean without a powered mask.

68. Plaintiff was in the hospital for one day.

69.  On or about February 6, 2013, Washington Occupational Health Associates, Inc., again notified AOC that Plaintiff was "qualified" to use a respirator.

70. In the same report of February, 2013, Washington Occupational Health Associates, Inc., notified AOC that Plaintiff had severe obstruction in his lung capacity.

71. In 2013, Plaintiff suffered from Asthma, Hypertension, High Blood Pressure, Sickle Cell Hemoglobin C, Aortic Valve Regurgitation, Sleep Apnea, Borderline Enlarged Heart, Osteoarthritis Knees, and Breathing Impairment NOS.

72. On or about February 13, 2013, Lewis W. Cole, assistant Supervisor of the Sheet metal Branch, AOC, notified Plaintiff that he was being demoted from the position of Sheet Metal Mechanic, WG-3806-11/05 to the position of Sheet Metal Helprer, WG-3806-08/05.

73. On or about February 28, 2013, Plaintiff responded to the letter from Mr. Cole in which he refuted the claims that Plaintiff was performing his job at a substandard level in performance elements 2 and 4.

74. On or about July 1, 2013, Takas P. Tzamaras, Superintendent of the Senate Office Buildings, sent Plaintiff a letter in which he informed Plaintiff that Plaintiff would be demoted for alleged deficiencies in his work performance.

75. On or about July 22, 2013, Plaintiff wrote a letter to Takas P. Tzamaras, Superintendent of the Senate Office Buildings, requesting that his demotion be delayed until after counseling by the Office of Compliance.

76. Mr. Tzamaras denied the request.

77. On or about July 23, 2013, pursuant to § 1402 of the CAA, Plaintiff filed his Formal Request for Counseling with the Congressional Office of Compliance ("OOC").

78. On September 12, 2013, Plaintiff presented Defendant with a request for an industrial mask for his lung impairment and for an accommodation for his arthritic knee condition.

79. On or about October 22, 2013, Plaintiff formally requested a disability accommodation for his lung impairment and his knee impairment.

80. In his October 22, 2013 disability accommodation request, Plaintiff asked for a positive flow full face industrial mask for his sever lung impairment.

81. On about November 15, 2013, Liz A. Honnoll, Director of Equal Employment Opportunity and Diversity Programs Office of AOC, wrote Plaintiff a letter in which she granted Plaintiff's request for an accommodation for his knee impairment.

82. Ms. Honnoll denied Plaintiff's request for an industrial full face mask.

83. Ms. Honnoll stated that Plaintiff's information that he submitted in support of his request for a full face mask was not sufficient to determine the need for such an apparatus.

84. Ms. Honnoll agreed to provide Plaintiff with a non-powered dust mask with a charcoal filter.

85. Ms. Honnoll instructed Plaintiff that he was required to bring documentation signed by Dr. Scott, Office of the Attending Physician, which denotes Plaintiff's lung capacity and which explains Plaintiff's need for a face mask that forces air into Plaintiff's lungs.

86. Ms. Honnoll also instructed Plaintiff to obtain additional clarification from Dr. Glen Jacob on how the use of a full face mask will alleviate the symptoms of Plaintiff's condition.

87. Contrary to Section IV of the AOC Reasonable Accommodation in Employment Policy and Procedures manual ("manual"), AOC failed to determine the sufficiency of the medical information submitted by Plaintiff to support his request for a reasonable accommodation for his lung impairment.

88. Contrary to the manual, AOC failed to seek further medial documentation to evaluate Plaintiff's request for a reasonable accommodation for his lung impairment.

89. Contrary to the manual, AOC did not request that Plaintiff provide additional medical documentation for the reasonable accommodation for his lung impairment.

90. On or about December 18, 2013, Dr. Samuel J. Scott, MD, of the Washington Occupational Health Associates, Inc., of 1140 19th Street, NW, Washington, DC again notified Plaintiff and Defendant that Plaintiff had been examined as per OSHA Standard 29 C.F.R.  1910.134 and had been found to need a powered air-purifying respirator for work.

91. On or about April 23, 2014, Washington Occupational Health Associates, Inc., again notified AOC that Plaintiff was qualified for a powered air-purifying respirator, only.

92. Defendant refused to provide Plaintiff a qualified powered air-purifying respirator.

93. Plaintiff was harmed by Defendant's discriminatory actions.

94. From February 2013, until the approximate date of his retirement, Plaintiff was subjected to

unwarranted criticism of the quality and the quantity of his work by his supervisors.

95. On occasion, during his rest periods and lunch break, Plaintiff was given orders to stop his

break and report to work, solely for the purpose of harassment.

96. Plaintiff was subjected to increased criticism and writeups after he filed his formal request for

counseling with OOC.

97.  On one occasion, Plaintiff's supervisor, Charlie Smith, hit Plaintiff in the foot with the door

to Smith's office.

98.  In response to the assault, Plaintiff was written up by his supervisor Charlie Smith for

allegedly damaging government property, which was a pretext for unlawful discrimination.

99. Plaintiff suffered emotional distress, when he was asked to grind metal or to work in the

close vicinity of other employees grinding metal without a powered dust mask.

100. Plaintiff suffered physical pain and suffering when he was asked to grind metal or to work

in the close vicinity of other employees grinding metal without a powered dust mask.

101. Plaintiff suffered mental anguish when he was asked to grind metal or to work in the close

vicinity of other employees grinding metal without a powered dust mask.

102. Plaintiff suffered humiliation and embarrassment when he was criticized and belittled for

allegedly not working as fast as his supervisors demanded of him when he was work in dustly

environments without a powered dust mask.

103. Plaintiff was humiliated when he was demoted from the position of a sheet metal mechanic

to a sheet metal helper and had to work with the same employees that he worked with when he

was a sheet metal mechanic.

104. Defendant was on notice since 1994 that Plaintiff needed a reasonable accommodation of a

powered dust mask.

## COUNT I
## DISCRIMINATION DUE TO DISABILITY

105. The allegations of the foregoing paragraphs are incorporated herein by reference.

106. Defendant was placed on notice that Plaintiff had a chronic lung impairment.

107. Plaintiff's lung impairment caused Plaintiff to struggle to breathe, especially in dusty conditions.

108. Defendant was placed on notice that Plaintiff needed a positive pressure (powered-air) ventilation mask to work in duty environments.

109. Defendant was placed on notice that failure to provide plaintiff with a proper ventilation mask would imperil Plaintiff's health.

110. Defendant was placed on notice that failure to provide Plaintiff with a proper ventilation mask would degrade Plaintiff's work performance.

111. Defendant refused to provide Plaintiff with a proper ventilation mask.

112. Proper ventilation masks were readily available to Defendant.

113. Providing Plaintiff with a proper ventilation mask was relatively inexpensive.

114. Defendant required Plaintiff to work in dusty conditions without a proper ventilation mask.

115. Plaintiff's health was imperiled by Defendant's refusal to provide Plaintiff with a proper ventilation mask.

116. Plaintiff's job performance was imperiled by Defendant's insistence that Plaintiff work in dusty environments without a proper ventilation mask.

117. The effect of the unlawful discriminatory practices taken by Defendant as set forth herein

this Complaint was to adversely affect and alter the terms and conditions and privileges of Plaintiff's employment.

118. As a direct and proximate cause of the actions set forth above, Plaintiff has suffered and continues to suffer damages, including but not limited to impaired health, lost wages, attorney's fees and other compensatory damages.

119. Defendant continued to demand that Plaintiff work in circumstances that were designed to expose Plaintiff to dusty and hazardous air-bourne particles.

120. Defendant placed Plaintiff in work environments that Defendant knew or should have known would impair Plaintiff's quality of work.

121. Defendant failed to provide a reasonable accommodation to the known physical disability of Plaintiff, who was an otherwise qualified employee, when the accommodation would not impose an undue hardship on the operation of Defendant's business.

122. Defendant's actions were designed to injure Plaintiff.

WHEREFORE, Plaintiff prays the Court to:

(a) Declare that the unlawful discriminatory employment practices complained of herein were in violation of 2 U.S.C. 1311(a)( 1) of the CAA.

(b) Grant judgment to Plaintiff.

(c) Award Plaintiff damages of THREE HUNDRED THOUSAND DOLLARS ($300,000).

(d) Award Plaintiff back pay for unlawful demotion from sheet metal mechanic to sheet metal helper.

(e) Award Plaintiff reasonable attorneys' fees and costs.

(f) Award Plaintiff increased medical benefits for the injury to Plaintiff's health.

(g) Award Plaintiff punitive damages.

(h) Award Plaintiff compensatory damages of ONE MILLION DOLLARS ($1,000,000).

(I) Enjoin the Defendant from discriminating against qualified individuals with disabilities in all aspects of employment including, but not limited to, failing or refusing to make reasonable accommodations to qualified disabled applicants or employees, unless the Defendant can demonstrate that the accommodation would impose an undue hardship;

(j)  Provide remedial relief sufficient to make Plaintiff whole for the loss he has suffered as a result of the discrimination against him, including granting him monetary compensation for his out of pocket costs and for the pain and suffering caused by the Defendant's discriminatory conduct pursuant to and within the statutory limitations of 42 U.S.C. § 1991a;

(k) Require Defendant to modify its policies, practices, and procedures as necessary to bring its employment practices into compliance with Title I of the ADA and its accompanying regulations;

(l) Order Defendant to train all managers and Human Resources staff as to the requirements of the ADA including, but not limited to, the obligation to provide reasonable accommodations to employees with disabilities; and

(m) Award such other additional relief as justice may require.

## COUNT II
## CONSTRUCTIVE DISCHARGE DUE TO VIOLATIONS OF THE ADA

123. The allegations of the foregoing paragraphs are incorporated herein by reference. Defendant's conduct as described in this Complaint constitutes discrimination on the basis of disability in violation of Title I of the ADA, 42 U.S.C. § 12111 *et seq.*, and its implementing regulation, 29 C.F.R. § 1630, in the following ways:

124. Defendant failed to provide a reasonable accommodation to the known physical disability of Plaintiff, who was an otherwise qualified employee, when the accommodation would not impose an undue hardship on the operation of Defendant's business.

125. Defendant, through its agents, demoted Plaintiff.

126. Defendant, through its agents, continually threatened Plaintiff with further disciplinary action.

127. Defendant, through its agents, subjected Plaintiff to unwarranted and gratuitous criticism of his work.

128. Defendant, through its agents, attempted to provoke Plaintiff into a physical altercation.

129. Defendant, through its agents, threatened the safety and well being of Plaintiff by refusing to provide Plaintiff with proper equipment to perform hazardous work.

130. Requiring Plaintiff to shave or grind metal or to work in dusty environments without a powered dust mask made Plaintiff's work conditions dangerous to Plaintiff's health and intolerable.

131. Plaintiff's efforts to bring the intolerable conditions of his work site to his manager was fruitless.

132. Plaintiff's complaints regarding his intolerable conditions of his work site to OOC counseling and mediation were fruitless.

133. Plaintiff was forced to leave his employment with AOC to alleviate the intolerable conditions caused by Defendant.

134. Defendants actions were intentional.

135. Defendant provided Plaintiff with no recourse for relief other than retirement.

136. Defendant's actions constitute constructive discharge of Plaintiff.

137. By constructively discharging Plaintiff, when Defendant demoted Plaintiff and threatened him with disciplinary action, causing him to reasonably fear termination and loss of pension.

WHEREFORE, Plaintiff prays the Court to:

(a) Declare that the unlawful discriminatory employment practices complained of herein were in violation of 2 U.S.C. 1311(a)( 1) of the CAA.

(b) Grant judgment to Plaintiff.

(c) Award Plaintiff damages of THREE HUNDRED THOUSAND DOLLARS ($300,000).

(d) Award Plaintiff back pay for unlawful demotion from sheet metal mechanic to sheet metal helper.

(e) Award Plaintiff reasonable attorneys' fees and costs.

(f) Award Plaintiff increased medical benefits for the injury to Plaintiff's health.

(g) Award Plaintiff punitive damages.

(h) Award Plaintiff compensatory damages of ONE MILLION DOLLARS ($1,000,000).

(I) Enjoin the Defendant from discriminating against qualified individuals with disabilities in all aspects of employment including, but not limited to, failing or refusing to make reasonable accommodations to qualified disabled applicants or employees, unless the Defendant can demonstrate that the accommodation would impose an undue hardship;

(j)  Provide remedial relief sufficient to make Plaintiff whole for the loss he has suffered as a result of the discrimination against him, including granting him monetary compensation for his out of pocket costs and for the pain and suffering caused by the Defendant's discriminatory conduct pursuant to and within the statutory limitations of 42 U.S.C. § 1991a;

(k) Require Defendant to modify its policies, practices, and procedures as necessary to bring its employment practices into compliance with Title I of the ADA and its accompanying regulations;

(l) Order Defendant to train all managers and Human Resources staff as to the requirements of the ADA including, but not limited to, the obligation to provide reasonable accommodations to employees with disabilities; and

(m) Award such other additional relief as justice may require.

## COUNT III
## HOSTILE WORK ENVIRONMENT

138. Allegations of the foregoing paragraphs are incorporated herein by reference.

139. On nearly a daily basis, Plaintiff's supervisors criticized Plaintiff's work performance without any basis.

140. Defendant falsely accused Plaintiff of insubordination.

141. Defendant initiated performance review criticisms of Plaintiff such that Plaintiff was unable to perform his duties.

142. Defendant's actions caused Plaintiff to become ill due to stress.

143. Plaintiff feared that Defendant's criticism and writeups were a pretext in an attempt to terminate Plaintiff's employment.

144. Defendant's actions were intentional.

WHEREFORE, Plaintiff prays the Court to:

(a) Declare that the unlawful discriminatory employment practices complained of herein were in violation of 2 U.S.C. 1311(a)( 1) of the CAA.

(b) Grant judgment to Plaintiff.

(c) Award Plaintiff damages of THREE HUNDRED THOUSAND DOLLARS ($300,000).

(d) Award Plaintiff back pay for unlawful demotion from sheet metal mechanic to sheet metal helper.

(e) Award Plaintiff reasonable attorneys' fees and costs.

(f) Award Plaintiff increased medical benefits for the injury to Plaintiff's health.

(g) Award Plaintiff punitive damages.

(h) Award Plaintiff compensatory damages of ONE MILLION DOLLARS ($1,000,000).

(I) Enjoin the Defendant from discriminating against qualified individuals with disabilities in all aspects of employment including, but not limited to, failing or refusing to make reasonable accommodations to qualified disabled applicants or employees, unless the Defendant can demonstrate that the accommodation would impose an undue hardship;

(j)  Provide remedial relief sufficient to make Plaintiff whole for the loss he has suffered as a result of the discrimination against him, including granting him monetary compensation for his out of pocket costs and for the pain and suffering caused by the Defendant's discriminatory conduct pursuant to and within the statutory limitations of 42 U.S.C. § 1991a;

(k) Require Defendant to modify its policies, practices, and procedures as necessary to bring its employment practices into compliance with Title I of the ADA and its accompanying regulations;

(l) Order Defendant to train all managers and Human Resources staff as to the requirements of the ADA including, but not limited to, the obligation to provide reasonable accommodations to employees with disabilities; and

(m) Award such other additional relief as justice may require.

## COUNT IV

## RETALIATION

145. The allegations of the foregoing paragraphs are incorporated herein by reference.

146.  By requesting a reasonable accommodation, Plaintiff engaged in a protected activity.

147.  After Plaintiff began counseling and mediation with OOC, Defendant increased its criticism of Plaintiff's work.

148.  In addition to unwarranted criticism of Plaintiff's work, Defendant attempted to induce Plaintiff to react emotionally by picking arguments with Plaintiff and waiting until Plaintiff was on his break time to criticize him about his work.

149.  Defendant's actions were continuous.

150.  Defendant's actions caused Plaintiff to believe that he would be involuntarily removed from employment.

151.  Defendant's actions made Plaintiff's working conditions intolerable.

WHEREFORE, Plaintiff prays the Court to:

(a) Declare that the unlawful discriminatory employment practices complained of herein were in violation of 2 U.S.C. 1311(a)( 1) of the CAA.

(b) Grant judgment to Plaintiff.

(c) Award Plaintiff damages of THREE HUNDRED THOUSAND DOLLARS ($300,000).

(d) Award Plaintiff back pay for unlawful demotion from sheet metal mechanic to sheet metal helper.

(e) Award Plaintiff reasonable attorneys' fees and costs.

(f) Award Plaintiff increased medical benefits for the injury to Plaintiff's health.

(g) Award Plaintiff punitive damages.

(h) Award Plaintiff compensatory damages of ONE MILLION DOLLARS ($1,000,000).

(I) Enjoin the Defendant from discriminating against qualified individuals with disabilities in all aspects of employment including, but not limited to, failing or refusing to make reasonable accommodations to qualified disabled applicants or employees, unless the Defendant can demonstrate that the accommodation would impose an undue hardship;

(j)  Provide remedial relief sufficient to make Plaintiff whole for the loss he has suffered as a result of the discrimination against him, including granting him monetary compensation for his out of pocket costs and for the pain and suffering caused by the Defendant's discriminatory conduct pursuant to and within the statutory limitations of 42 U.S.C. § 1991a;

(k) Require Defendant to modify its policies, practices, and procedures as necessary to bring its employment practices into compliance with Title I of the ADA and its accompanying regulations;

(l) Order Defendant to train all managers and Human Resources staff as to the requirements of the ADA including, but not limited to, the obligation to provide reasonable accommodations to employees with disabilities; and

(m) Award such other additional relief as the nature of this case warrants.

## JURY DEMAND

Plaintiff demands trial by jury of all matters so triable.

Respectfully submitted,

_____/s/_____

Raouf M. Abdullah, 475700

Attorney for Plaintiff