UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DONALD KAY HAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-1390 (RMC) |
| | ) | |
| STEPHEN T. AYERS, In His Official Capacity, Architect of the Capitol, *et al.*, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

**OPINION**

Donald Kay Ham worked for the Architect of the Capitol, Senate Office Buildings Division, as a sheet metal mechanic until, fearing discharge, he resigned on July 31, 2015. In this lawsuit, he alleges that the Architect of the Capitol discriminated against him in violation of the Congressional Accountability Act and the Americans with Disabilities Act. The Architect of the Capitol has filed a motion to dismiss Counts I, II, and IV of Mr. Ham's complaint for failure to exhaust his administrative remedies as to those allegations. Mr. Ham opposes. Because these pre-litigation steps must be completed or the Court is without jurisdiction to hear a case, the Motion to Dismiss Counts I, II, and IV will be granted. The Defendant will be ordered to file its Answer within 21 days of the issuance of this Opinion.

**I. FACTS**

Mr. Ham is a 61-year-old African American who was employed by the Architect of the Capitol (AOC)[1] for approximately 22 years, from November 1, 1991 until July 31, 2015.

---

[1]  Although the Complaint names Stephen T. Ayers, who is the Architect of the Capitol, Mr. Ayers is only sued in his official capacity. The agency, the AOC, is substituted in his place. *See*

1

There is no dispute that in this position, he was a covered employee under the Congressional Accountability Act (CAA), 2 U.S.C. §§ 1301-1438.[2] He also alleges that he is an individual with a disability within the meaning of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12111 *et seq.*, which the CAA applies to Congress and its agencies.

Mr. Ham alleges that he was an experienced sheet metal mechanic and in excellent health when he joined AOC. However, "[f]rom the beginning of his employment with AOC, Plaintiff was exposed to loud noises, particulate-laden air, dust, and he was required to carry heavy loads." Compl. [Dkt. 1] ¶ 33. Mr. Ham further alleges that starting in 1994 and frequently thereafter, health professionals contracted by AOC reported to AOC that he had lung problems that required him to have a powered respirator to supply air to his damaged lungs. *See id.* ¶¶ 37-40, 42-49, 51-53, and 55-56. During this period (from 1994 through August 2012), AOC refused and/or failed to purchase a powered respirator for Mr. Ham; it also consistently awarded him high performance ratings.

On August 2, 2012, Mr. Ham was instructed to clean out a HEPA vacuum cleaner "by blowing out clogged dust into a garage that was enclosed by plastic drapes." *Id.* ¶ 62. HEPA stands for high-efficiency particulate air; the vacuum cleaner was equipped with a HEPA filter and had been used to "vacuum fine particles of blown insulation that had fallen from the ceiling." *Id.* ¶ 63. Due to the intake of dust from the vacuum cleaner, Mr. Ham became dizzy

---

*Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

[2] The Congressional Accountability Act applies thirteen civil rights, labor, and workplace safety and health laws to the United States Congress and its Legislative Branch agencies; one such Legislative Branch agency is the AOC. One of the thirteen statutes is the Americans with Disabilities Act. *See* Mot. [Dkt. 13-1] at 1 n.2.

and partially asphyxiated and was transported by ambulance to Howard University Hospital, where he spent a day recovering.

Plaintiff alleges that one of the AOC-contracted health care professionals notified AOC in February 2013 that Mr. Ham "had severe obstruction in his lung capacity." *Id.* ¶ 70. On or about February 13, 2013, Lewis W. Cole, assistant Supervisor of the Sheet Metal Branch, AOC, notified Mr. Ham that he was being demoted from a mechanic to a helper position because of substandard performance. Mr. Ham rebutted Mr. Cole's notice, but on or about July 1, 2013, Takas P. Tzamaras, Superintendent of the Senate Office Buildings, sent a letter to Mr. Ham in which he told Mr. Ham that he would be demoted for performance deficiencies.

Mr. Ham additionally alleges that "[f]rom February 2013, until the approximate date of his retirement, [he] was subjected to unwarranted criticism of the quality and the quantity of his work" (as a Helper) and written up for alleged flaws in his work. *Id.* ¶ 94. He also suffered from working around grinding metal pieces and in dusty environments without protection for his lungs.

On or about July 23, 2013, Mr. Ham filed a Formal Request for Counseling with the Congressional Office of Compliance. Thereafter, the parties engaged in unsuccessful administrative mediation. In the fall of 2013, he sought an accommodation for his disabling lung capacities (through use of a powered air-purifying respirator) and knee. AOC provided only a brace for his knee. Despite advice from their own contract health professionals in late 2013 and spring 2014 that Mr. Ham needed a powered air-purifying respirator, AOC did not provide one.

Mr. Ham filed this lawsuit on August 26, 2015. His Complaint contains four counts:

> Count 1 alleges disability discrimination, for which he seeks $300,000 in compensatory damages, backpay, medical benefits, and

attorney fees and costs. Mr. Ham further seeks an award of punitive damages of $1,000,000 and an injunction to prevent AOC from depriving other employees with disabilities of their rights to a reasonable accommodation.

Count II alleges that Mr. Ham was constructively discharged in violation of the ADA, for which he separately seeks the same monetary and equitable relief.

Count III alleges that AOC created a hostile work environment for Mr. Ham by continuous, unwarranted, accusations which caused him to become ill and fear that he would be discharged, in violation of the Congressional Accountability Act, for which he seeks the same monetary and equitable relief.

Count IV alleges that AOC retaliated against Mr. Ham after he requested a reasonable accommodation and, even more, after he began counseling and mediation with OOC. He seeks the same monetary and equitable relief.

Compl. ¶¶ 105-151. AOC moved to dismiss Counts I, II, and IV. Mot. Mr. Ham opposed, Opp'n [Dkt. 16], and AOC replied. Reply [Dkt. 21]. The motion to dismiss in part is ripe for decision.[3]

## II.  LEGAL STANDARD

### A.  Congressional Accountability Act (CAA), 2 U.S.C. § 1301 *et seq.*

The Congressional Accountability Act extended the protections of thirteen civil rights, labor, and workplace safety and health laws to Congress and Legislative Branch agencies, including the AOC. *See* 2 U.S.C. §§ 1301(5), 1302(a). An employee covered under the CAA may commence a civil action "only to seek redress for a violation for which the employee has completed counseling and mediation." 2 U.S.C. § 1408(a); *see also Gordon v. Office of the*

---

[3] The Court has jurisdiction pursuant to the Congressional Accountability Act of 1995. *See* 2 U.S.C. § 1404, 1408(a) (providing a civil right to sue in the district of employment or the District of Columbia). Mr. Ham was employed in the District of Columbia. Venue is proper under 28 U.S.C. § 1391 because the AOC is located in the District of Columbia, Mr. Ham was employed in the District of Columbia, and the alleged events took place in the District of Columbia.

*Architect of the Capitol*, 750 F. Supp. 2d 82, 89-90 (D.D.C. 2010).  An employee must make a request for counseling within 180 days of an alleged violation.  2 U.S.C. § 1402(a).  Therefore, before an employee may file a claim he must (1) make a request for counseling within 180 days of the alleged violation and (2) complete counseling and mediation for each violation.  *See Gordon*, 750 F. Supp. 2d at 92-93 ("This Court has also held that the completion of counseling and mediation for one set of violations does not give the court jurisdiction over related claims of retaliation that occurred after counseling had commenced; the administrative remedies must be exhausted for each claim."); *Halcomb v. Office of the Senate Sergeant-At-Arms*, 209 F. Supp. 2d 175, 177-79 (D.D.C. 2002) ("Because the language of the CAA provision at issue in this case clearly confers jurisdiction to this Court only if plaintiff has satisfied the administrative prerequisites to filing suit, the Court holds that plaintiff's claim of retaliation must be dismissed for failure to exhaust her administrative remedies.").

### B.  Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

The ADA prohibits discrimination against "a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a); *see also Owens-Hart v. Howard University*, No. 14-758, 2016 WL 7115956, at *5 (D.D.C. Dec. 6, 2016).  A claim for discrimination under the ADA must allege that:  (1) the plaintiff had a disability within the meaning of the statute, (2) the employer had notice of the disability, (3) "with reasonable accommodation [the employee] could perform the essential functions of [the] job"; and (4) "the employer refused to make such accommodations."  *Floyd v. Lee*, 968 F. Supp. 2d 308, 315-16 (D.D.C. 2013).

### C. Motion to Dismiss – Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move to dismiss a complaint, or any portion thereof, for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). No action of the parties can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is both a statutory requirement and an Article III requirement. *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003). The party claiming subject matter jurisdiction bears the burden of demonstrating that such jurisdiction exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (noting that federal courts are courts of limited jurisdiction and "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction") (internal citations omitted).

When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court must review the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004). Nevertheless, "the Court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006). A court may consider materials outside the pleadings to determine its jurisdiction. *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005); *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003). A court has "broad discretion to consider relevant and competent evidence" to resolve factual issues raised by a Rule 12(b)(1) motion. *Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*, 873 F. Supp. 2d 363, 368 (D.D.C. 2012) (citing 5B Charles Wright & Arthur Miller, Fed. Prac. & Pro., Civil § 1350 (3d ed. 2004)); *see also Macharia v. United States*, 238 F. Supp. 2d 13, 20 (D.D.C. 2002), *aff'd*, 334 F.3d 61 (2003) (in

reviewing a factual challenge to the truthfulness of the allegations in a complaint, a court may examine testimony and affidavits). In these circumstances, consideration of documents outside the pleadings does not convert the motion to dismiss into one for summary judgment. *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 21 (D.D.C. 2003).

When a plaintiff sues the United States, or one of its agencies or departments, the complaint must allege facts that show that sovereign immunity has been waived. *See Lane v. Pena*, 518 U.S. 187, 192 (1996) (waiver of sovereign immunity will be strictly construed).

### III.  ANALYSIS

The CAA waives congressional immunity from suit and is, therefore, strictly construed. *See* 2 U.S.C. § 1408(a); *Lane*, 518 U.S. at 192. Its terms, acknowledged by Mr. Ham, require an employee to obtain counseling on any charge of wrongdoing covered by the CAA and then to mediate any remaining dispute before instituting litigation. 2 U.S.C. § 1408(a). AOC contends that Mr. Ham never completed this administrative process for Counts I, II, and IV and, therefore, the Court is without jurisdiction to consider those allegations. Mr. Ham strenuously disagrees.

Certain things are uncontested. Mr. Ham filed a Formal Request for Counseling with the Office of Compliance, dated July 22, 2013 and filed July 23, 2013. Opp'n, Ex. 3 [Dkt. 16-3] (Formal Request). He complained of discrimination based on his race, African-American; his disability, Asthma; his color, Black; and his age, 59 years old. *Id.* at 1. Specifically, Mr. Ham complained that on February 13, 2013, he received an "unfair evaluation [and] demotion," for which he sought "[r]elief from harassment [and] reinstatement to former position." *Id*. at 2. He also complained that on July 17, 2013, he was subjected to "[h]arassment – hostile work environment," for which he requested "fair treatment." *Id*. After counseling, Mr. Ham requested mediation with the Office of Compliance and the latter assigned a mediator from its staff on

September 11, 2013. Opp'n, Ex. 2 [Dkt. 16-2] (Notice of Invocation of Mediation). On or about June 12, 2014, the Office of Compliance notified him that mediation had ended. Mr. Ham filed this suit on August 26, 2015.

The "three-step process" under the CAA is jurisdictional, which means that it must be completed or a federal court has no jurisdiction to hear the case. *Blackmon-Malloy v. U.S. Capitol Police Board*, 575 F.3d 699, 701 (D.C. Cir. 2009). To complete these steps, and thereby exhaust a claim under the CAA fully, an employee must (1) request counseling within six months of a discriminatory act, (2) request and complete mediation, and only then, (3) commence a civil action. *See id.* at 705-06. "'A civil action may be commenced by a covered employee only to seek redress for a violation for which the employee has completed counseling and mediation.'" *Id.* at 705 (quoting 2 U.S.C. § 1408(a)). Section 1410 of the CAA emphasizes this point: "Except as expressly authorized by sections 1407, 1408, and 1409 of this title, the compliance or noncompliance with the provisions of this chapter and any action taken pursuant to this chapter shall not be subject to judicial review." 2 U.S.C. § 1410.

Mr. Ham's arguments must be evaluated within this context of clear statutory directions that govern and limit Congress's waiver of sovereign immunity.

### A. Count I (Disability Discrimination)

Count I alleges disability discrimination after Mr. Ham requested a reasonable accommodation for his lung problems. Mr. Ham describes his worsening lung problems over the years and the resulting doctors' reports to AOC, which indicated that his lungs were deteriorating. For purposes of meeting his obligation to have been denied an accommodation within six months of his request for counseling, he relies on a February 6, 2013 report to AOC from Washington Occupational Health Associates that he "qualified" to use a respirator. Opp'n, Ex. 1 [Dkt. 16-1] (Feb. 2013 Doctor's Report). Mr. Ham argues that the Feb. 2013 Doctor's

Report "notified AOC that Mr. Ham had severe obstruction in his lung capacity" and qualifies as a notice of a need for an accommodation which was ignored. Opp'n at 2.

"An underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied." *Flemmings v. Howard University*, 198 F.3d 857, 861 (D.C. Cir. 1999); *see also Woodruff v. LaHood*, 777 F. Supp. 2d 33, 40 (D.D.C. 2011) (finding the burden lies with the employee to make a request for accommodation). The law does not specify any formalities or specific format for a request for an accommodation, but "the employer must be alerted to the condition and the need for accommodation." *Thompson v. Rice*, 422 F. Supp. 2d 158, 176 (D.D.C. 2006). However, if an employer has a set of procedures for requesting accommodations, a failure to comply with the designated process might preclude suit by the employee. *See Edwards v. EPA*, 456 F. Supp. 2d 72, 102-03 (D.D.C. 2006).

The Court does not read the cited Feb. 2013 Doctor's Report as notice that Mr. Ham suffered a severe obstruction to his lung capacity or that Mr. Ham required an accommodation to perform his job. The report only stated that Mr. Ham was "qualified" to use a "respirator," not that his lungs were badly congested or that he needed a powered respirator. Feb. 2013 Doctor's Report. Without evidence of a timely request or notice to AOC that Mr. Ham needed an accommodation for his failing lungs,[4] Mr. Ham has failed to allege that AOC denied him a reasonable accommodation prior to his request for counseling. To be clear, the only request for an accommodation alleged in the Complaint was in Fall 2013, after Mr. Ham's

---

[4] The Court has not seen and does not decide whether any earlier report from a health care professional gave AOC sufficient information that it could be deemed notice of Mr. Ham's need for an accommodation. Earlier reports are irrelevant if the Feb. 2013 Doctor's Report does not qualify as a timely request or notice.

2013 requests for counseling and mediation. *See* Compl. ¶¶ 78-80. But when this request was not granted, Mr. Ham failed to seek counseling and mediation again. Count I must be dismissed because the Court is without jurisdiction.

### B. Count II (Constructive Discharge)

Mr. Ham resigned from AOC on July 31, 2015, two years after he sought counseling with the Office of Compliance. He did not bring his claim of constructive discharge to the Office of Compliance for counseling or mediation. Mr. Ham argues that he exhausted his constructive-discharge claim because the events that led him to resign took place before he sought counseling in July 2013.

A constructive discharge claim relies on proof that an employee's "working conditions bec[a]me so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004). The gap in time between Mr. Ham's 2013 request for counseling and 2015 resignation seriously undercut the unspoken argument that his working conditions in 2013 continued to be so intolerable, without remission, that he was compelled to resign in 2015.

More importantly, having accepted the possibility of liability by waiving its rights to sovereign immunity, Congress and its agencies are covered by the interpretations given to the applicable laws by the Judiciary. As relevant here, the Supreme Court has held that a constructive-discharge claim "accrues only *after* an employee resigns." *Green v. Brennan*, 136 S. Ct. 1769, 1776-77 (2016) (emphasis added); *see also Ross v. U.S. Capitol Police*, No. 14-1400, 2016 WL 3659888, at *10 & n.7 (D.D.C. June 30, 2016) (applying *Green* to a CAA claim). This Judge agrees with its colleague "that the completion of counseling and mediation for one set of violations does not give the court jurisdiction over related claims of retaliation that

occurred after counseling had commenced; the administrative remedies must be exhausted for each claim." *Gordon*, 750 F. Supp. 2d at 92-93.

Because Mr. Ham's right to complain of a constructive discharge accrued only after he resigned his job with AOC in July 2015, and he admittedly did not seek separate counseling or mediation thereafter, he cannot proceed under the CAA to litigate that allegation here. The Court has no jurisdiction over this claim and Count II must be dismissed.

### C. Count IV (Retaliation)

Count IV alleges that Mr. Ham suffered from AOC retaliation after he engaged in protected activities under the CAA/ADA, specifically "requesting a reasonable accommodation" and beginning "counseling and mediation." Compl. ¶¶ 146-47. Defendant moves to dismiss because all such events occurred only after he sought counseling on July 23, 2013, and Mr. Ham never sought counseling or mediation concerning such retaliatory actions. Mr. Ham protests that he asked for a powered respirator in February 2013 to accommodate his lung problems and that AOC retaliated against him for that reason, as well as earlier notices or requests outside the limitations period of 180 days. *See* Opp'n at 6.

As discussed above, the Feb. 2013 Doctor's Report did not address powered respirators or Mr. Ham's need for one; it only stated that he "qualified" to use a respirator pursuant to a regulation of the Occupational Safety and Health Administration (OSHA). *See* Feb. 2013 Doctor's Report; OSHA, Respiratory Protection, 29 C.F.R. § 1910.134. The Feb. 2013 Doctor's Report does not constitute a request for an accommodation and did not notify AOC of Mr. Ham's lung disability. His participation in that required check was not, therefore, protected activity that would support a retaliation claim. In fact, the protected activity alleged in the Complaint are Mr. Ham's request for counseling in July 2013, request for mediation after counseling, and request for an accommodation for his lung problems in the fall of 2013. "[T]o

bring a civil action for any retaliatory action that allegedly occurred after her participation in the counseling or the mediation, the plaintiff should have requested additional counseling and mediation to address any such actions." *Gordon*, 750 F. Supp. 2d at 93. Because Mr. Ham never requested counseling and mediation after the alleged protected activity, he has not satisfied the mandatory pre-litigation steps of the CAA. *See Blackmon-Malloy*, 575 F.3d at 701-02. Count IV must be dismissed for lack of jurisdiction.

## IV.  CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss in part will be granted. Counts I, II, and IV will be dismissed. Defendant shall file an Answer to the Complaint within 21 days. A memorializing order accompanies this opinion.


Date: January 10, 2017                              /s/
                                          ROSEMARY M. COLLYER
                                          United States District Judge