UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DONALD KAY HAM, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Case No. 15-1390 (RMC) |
| STEPHEN T. AYERS, In His Official Capacity, Architect of the Capitol, *et al.*, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

Since 1995, Congress has allowed its staff to sue for violations of equal employment opportunity (EEO) rights as long as the employee completes certain pre-litigation administrative steps. Donald Kay Ham alleges that he suffered a discriminatory hostile work environment due to disabilities when he worked for the Architect of the Capitol. Both parties move for summary judgment but neither addresses the facts needed to determine whether Mr. Ham timely and adequately complained of a hostile work environment due to disabilities. Both motions will be denied without prejudice and further briefing will be ordered.

**I. FACTS**

Only those facts necessary to the current issues are recited. Plaintiff Donald Kay Ham is a 64 year old African American who worked as a sheet metal mechanic for the Architect of the Capitol (AOC), a congressional office, between 1991 and 2015. *See* Mem. of P. & A. in Opp'n to Defs.' Mot. for Summ. J. and in Supp. of Pl.'s Mot. for Summ. J. (Pl.'s Mot.) [Dkt. 43]

at 2; Defs.' Mot. for Summ. J. (Defs.' Mot.) [Dkt. 41] at 4.[1]  Mr. Ham alleges that he is an individual with a disability as defined by the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12111 *et seq*., which applied to his job with the AOC through the Congressional Accountability Act (CAA), 2 U.S.C. § 1301 *et seq*.  Mr. Ham asserts that his supervisors knew that he suffered from various physical ailments that affected his work:  he testified that he notified AOC that he suffered from sleep apnea when he first began working there in 1991, although he never sought an accommodation for it, *see* Ex. 1, Defs.' Mot, Depo. of Donald Kay Ham (Ham Depo.) [Dkt. 41-1] at 69-70; after a May 2007 examination by Washington Occupational Health Associates, Inc. (WOHA), Mr. Ham received a certificate indicating that his lung functions were abnormal, *see* Ex. 4, Pl.'s Mot., WOHA Employee Certification [Dkt. 44-5] at 1; primarily in 1994 but also multiple times thereafter, physical examinations conducted for the AOC concluded that he would do better with a powered air respirator, *see* Pls.' Mot. at 3-6; on one occasion in August 2012, Mr. Ham was overcome by dust and had to be taken to hospital, *see id*. at 6; and, most recently, on February 4, 2015 Washington Occupational Health Associates found that Mr. Ham was "qualified to use a respirator."  *See* Ex. 5, Pl.'s Mot., Medical Monitoring Examination Employer Notification [Dkt. 44-6] at 3.

    Mr. Ham was placed on a Performance Improvement Plan (PIP) on November 9, 2011 for a 90-day period to improve identified work flaws.  *See* Ex. A, Ham Depo., November 9, 2011 Performance Improvement Plan (Nov. 2011 PIP) [Dkt. 41-2] at 1.  On January 24, 2012, the PIP was extended to February 2, 2012, to allow his new supervisor more time to observe Mr. Ham's performance.  *See* Ex. 2, Defs.' Mot., January 24, 2012 Letter Extending Performance

---

[1] Citations to Defendants' Motion for Summary Judgment are to the electronic case filing (ECF) page number.

Improvement Plan (Jan. 2012 Letter) [Dkt. 41-4] at 1. On March 30, 2012, Mr. Ham was informed by his direct supervisor that he had failed the PIP and would be demoted to sheet metal mechanic's helper. *See* Ex. 3, Defs.' Mot., March 30, 2012 Letter to Mr. Ham from Mr. Cole (March 2012 Letter) [Dkt. 41-5] at 1. Mr. Ham appealed this decision to the Superintendent, Senate Office Buildings, who agreed that Mr. Ham had failed the PIP but extended it for another 90 days; the Superintendent decided that Mr. Ham, as a long-time employee of 20-odd years, should not suffer a demotion without more time to prove himself. *See* Ex. 6, Defs.' Mot., July 1, 2013 Letter to Mr. Ham from Takis P. Tzamaras (July 2013 Letter) [Dkt. 41-8] at 1. On February 13, 2013, Mr. Ham's supervisor again concluded that Mr. Ham had failed to demonstrate an acceptable level of performance and again decided to demote Mr. Ham. *See* Ex. 5, Defs.' Mot., February 13, 2013 Letter to Mr. Ham from Mr. Cole (Feb. 2013 Letter) [Dkt. 41-7] at 1-2. Mr. Ham again appealed this decision to the Superintendent on March 4, 2013 but, by decision dated July 1, 2013, the Superintendent agreed that Mr. Ham had failed his second PIP and he was demoted. *See* July 2013 Letter at 1.

Under the Congressional Accountability Act, an employee of Congress must first seek counseling on any EEO complaint; failing a satisfactory resolution, the employee must seek mediation of his complaint(s); only then, after these steps are completed, can an employee bring suit. On July 23, 2013, Mr. Ham filed a Formal Request for Counseling with the Congressional Office of Compliance. *See* Ex. 3, Pl.'s Opp'n to Mot. to Dismiss, Formal Request for Counseling (Counseling Request) [Dkt. 16-3] at 1. His Counseling Request identified the following complaints: discrimination due to race, color, age, and disability, unfair evaluation, demotion, and "harassment—hostile work environment." *Id*. at 1-2. On or about September 11, 2013, Mr. Ham requested mediation. *See* Ex. 2, Pl.'s Opp'n to Mot. to Dismiss, Notice of

Invocation of Mediation (Mediation Request) [Dkt. 16-2] at 1. The Mediation Request did not specify the issues Mr. Ham sought to mediate, but instead recounted the issues on which Mr. Ham had requested counseling in July 2013. *See id*. ("Mr. Ham formally requested counseling on July 23, 2013, alleging denial of reasonable accommodation, unfair evaluation, demotion, unfair terms and conditions, disparate treatment, *and harassment* because of race, age, color, disability, and retaliation, in violation of sections 201 and 207 of the Congressional Accountability Act.") (emphasis added).

Mr. Ham retired in July 2015, allegedly due to the harassment by his supervisors. *See* Ham Depo. at 75. He filed the instant Complaint on August 26, 2015 against Stephen T. Ayers, in his official capacity as the Architect of the Capitol. *See* Compl. [Dkt. 1]. Mr. Ham brought four counts against the AOC: (1) Discrimination Due to Disability; (2) Constructive Discharge Due to Violation of the ADA; (3) Hostile Work Environment; and (4) Retaliation. *See id*. ¶¶ 105-51. On May 17, 2016, the AOC moved to dismiss counts I, II, and IV on the grounds that Mr. Ham had failed to complete the administrative processes of the Congressional Accountability Act; this Court granted the motion on January 10, 2017. *See* Memorandum Opinion [Dkt. 23].

Following discovery, the AOC moved for summary judgment on Count III a year later. *See* Defs.' Mot. Mr. Ham opposed and filed a cross motion for summary judgment, *see* Pl.'s Mot., and the AOC filed a combined reply and opposition. *See* Defs.' Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. and in Further Supp. of Defs.' Mot. for Summ. J. (Defs.' Reply) [Dkt. 49]. The motions are ripe for review.

4

## II. LEGAL STANDARD

### A. Motion for Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is sufficient admissible evidence such that a reasonable jury could return a verdict for the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The party moving for summary judgment bears the initial responsibility of identifying portions of the record which demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (providing that the movant may cite to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials"). In response, the non-moving party must similarly designate specific facts in the record that reveal a genuine issue for trial. *See Celotex*, 477 U.S. at 324. On a motion for summary judgment, a court must analyze all facts and inferences in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, to the extent the non-moving party relies on conclusory assertions offered without evidentiary support, such assertions do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

### B. Congressional Accountability Act

The Congressional Accountability Act extended the protections of thirteen civil rights, labor, and workplace safety and health laws to Congress and Legislative Branch agencies, including the AOC. *See* 2 U.S.C. §§ 1301(5), 1302(a). An employee covered under the CAA

may commence a civil action "only to seek redress for a violation for which the employee has completed counseling and mediation." 2 U.S.C. § 1408(a); *see also Gordon v. Office of the Architect of the Capitol*, 750 F. Supp. 2d 82, 89-90 (D.D.C. 2010). An employee must make a request for counseling within 180 days of an alleged violation. 2 U.S.C. § 1402(a). Therefore, before an employee may file a court complaint he must (1) make a request for counseling within 180 days of the alleged violation and (2) complete counseling and mediation for each alleged violation. *See Gordon*, 750 F. Supp. 2d at 92-93 ("This Court has also held that the completion of counseling and mediation for one set of violations does not give the court jurisdiction over related claims of retaliation that occurred after counseling had commenced; the administrative remedies must be exhausted for each claim."); *Halcomb v. Office of the Senate Sergeant-at-Arms*, 209 F. Supp. 2d 175, 177-79 (D.D.C. 2002) ("Because the language of the CAA provision at issue in this case clearly confers jurisdiction to this Court only if plaintiff has satisfied the administrative prerequisites to filing suit, the Court holds that plaintiff's claim of retaliation must be dismissed for failure to exhaust her administrative remedies.").

### C. Hostile Work Environment

Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972 (Title VII), prohibits status-based discrimination in federal workplaces. 42 U.S.C. § 2000e-16. The CAA extended Title VII to the AOC. *See* 2 U.S.C. § 1302(a)(2). Title VII generally prohibits an employer from taking any "personnel action[]" based on an employee's race, color, religion, sex, or national origin. *See id*. § 2000e-16(a). The statute not only protects employees from discrete discriminatory acts, but also protects them from a hostile work environment, that is, a workplace permeated by discriminatory harassment based on an employee's protected status (race, color, religion, etc.). To establish a hostile work environment,

6

an employee must allege facts sufficient to demonstrate that the harassment is "sufficiently severe or pervasive to alter the conditions of the victim's employment":

> A plaintiff pleading a hostile work environment claim must show that he was exposed to "'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" To assess a claim of hostile work environment, the court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

*Durant v. District of Columbia Gov't*, 875 F.3d 685, 700 (D.C. Cir. 2017) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) and *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)) (internal citations omitted). There is no bright-line test for a hostile work environment, and a plaintiff need not show psychological harm or any specific adverse employment outcome. *See Harris*, 510 U.S. at 23. "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88, (1998)).

### III. ANALYSIS

The CAA waives congressional immunity from suit and is, therefore, strictly construed. *See* 2 U.S.C. § 1408(a); *Lane v. Pena*, 518 U.S. 187, 192 (1996) (waiver of sovereign immunity will be strictly construed). Its terms, acknowledged by Mr. Ham, require an employee to obtain counseling on any charge of wrongdoing covered by the CAA and then to mediate any remaining dispute before instituting litigation. 2 U.S.C. § 1408(a). Neither Mr. Ham, nor the AOC, indicates that counseling and mediation occurred on Mr. Ham's claim of a hostile work environment claim due to his disabilities.

7

However, certain things are uncontested. Mr. Ham filed a Formal Request for Counseling with the Office of Compliance, dated July 22, 2013 and filed July 23, 2013. *See* Counseling Request. He complained of discrimination based on his race, African-American; his disability, Asthma; his color, Black; and his age, 59 years old. *Id.* at 1. Specifically, as relevant, Mr. Ham complained that on February 13, 2013, he received an "unfair evaluation [and] demotion," for which he sought "[r]elief from harassment [and] reinstatement to former position." *Id*. at 2. He also complained that on July 17, 2013, he was subjected to "[h]arassment—hostile work environment," for which he requested "fair treatment." *Id*. After counseling, Mr. Ham requested mediation with the Office of Compliance and the latter assigned a mediator from its staff on September 11, 2013. *See* Mediation Request. On or about June 12, 2014, the Office of Compliance notified him that mediation had ended without resolution. Mr. Ham filed this suit on August 26, 2015.

The "three-step process" under the CAA is jurisdictional, which means that it must be completed or a federal court has no jurisdiction to hear the case. *Blackmon-Malloy v. U.S. Capitol Police Board*, 575 F.3d 699, 701 (D.C. Cir. 2009). "'A civil action may be commenced by a covered employee only to seek redress for a violation for which the employee has completed counseling and mediation.'" *Id.* at 702-03 (quoting 2 U.S.C. § 1408(a)). Section 1410 of the CAA emphasizes this point: "Except as expressly authorized by sections 1407, 1408, and 1409 of this title, the compliance or noncompliance with the provisions of this chapter and any action taken pursuant to this chapter shall not be subject to judicial review." 2 U.S.C. § 1410. Neither party addresses the exhaustion requirement in their motion for summary judgment but the Court is obligated to ensure itself of its jurisdiction.

When a court must determine the timeliness of events, it is, of course, helpful for the parties to provide dates, not all of which are included in the record here. Mr. Ham was first placed on a three-month PIP on November 9, 2011 for work deficiencies. After Mr. Ham was informed that he had failed the PIP, he sought reconsideration by the Superintendent, Senate Office Buildings. The Superintendent agreed that Mr. Ham had failed the PIP but extended it for another 90 days because Mr. Ham had worked for the AOC for more than 21 years. Mr. Ham's supervisor concluded that he had failed the second PIP as well, on February 13, 2013, and Mr. Ham again sought reconsideration. On July 1, 2013, the Superintendent agreed that Mr. Ham had failed the second PIP and that a demotion was appropriate. Mr. Ham sought EEO counseling on July 22, 2013.

Overlooking the two PIPs altogether, Mr. Ham recites only the dates relevant to his demotion. *See* Pl.'s Mot. at 6-7. He adds, without specificity, that "[f]rom February 2013, until the approximate date of his retirement [in 2015], Plaintiff was subjected to unwarranted criticism of the quality and the quantity of his work by his supervisors." *Id.* at 9. He also alleges that he "was subjected to increased criticism and writeups after he filed his formal request for counseling with OOC [the Office of Compliance]." *Id.* Further, he complains that he suffered "when he was asked to grind metal . . . without a powered dust mask." *Id.* at 9-10 (indicating Mr. Ham suffered from "emotional distress," "physical pain," and "mental anguish").

Mr. Ham's argument in support of his hostile work environment claim begins with an introductory sentence: "[t]he following incidents occurred after July 2013, when Plaintiff filed his request for counseling." *Id.* at 17. Thereafter, he identifies a variety of incidents allegedly designed to "make [P]laintiff's life on the job unbearable": his supervisors assigned new tasks on the PIP; failed to allow a medically-warranted forced-air respirator for his

9

use; required Mr. Ham to grind metal in closed spaces; awakened Mr. Ham during safety meetings by loud bangs on the table (alleged to be "violent and unhealthy tactics to wake up Plaintiff"); contacted Mr. Ham during breaks to ask questions; and confined co-workers to the shop for their work breaks due to Plaintiff. *Id*. Not only does Mr. Ham fail to include dates or timeframes for the hostile acts alleged *after* July 2013, but he also fails to argue why these acts present a valid hostile work environment claim under the CAA without a request for counseling and mediation *after* July 2013.

Since Mr. Ham never returned for counseling on these allegedly harassing incidents, Defendant might claim an easy victory. However, it is not quite so simple, because the Court must consider whether any post-July 2013 hostile acts might be a continuation of an earlier hostile work environment complaint that was included in the counseling and mediation requested by Mr. Ham in July 2013.

Neither party mentions the salient fact that Mr. Ham's request for counseling complained of "[h]arassment—hostile work environment" due to a specific incident on July 17, 2013. *See* Counseling Request at 2. Mr. Ham described the problem as "Mr. Cole would not allow me to take a break; Mr. Cole threatened." *Id.* He asked for "fair treatment" as a remedy. *Id.* This single incident was the only example he provided of a hostile work environment in the 180 days before Mr. Ham sought counseling. In legal parlance, a hostile work environment is a term of art meaning actions that are "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Vinson*, 477 U.S. at 67 (internal quotations omitted). A single incident of hostility is rarely sufficient to qualify. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. . . . [A]

10

single act of harassment may not be actionable on its own."). "Because [acts of harassment] may not all occur within the filing period, the Supreme Court has held 'provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" *Vickers v. Powell*, 493 F.3d 186, 198 (D.C. Cir. 2007) (quoting *Nat'l R.R. Passenger Corp.*, 536 U.S. at 117). The question becomes whether Mr. Ham's layman's use of the term "hostile work environment" in his request for counseling is sufficient to satisfy the requirements of the CAA and allow consideration of the post-July 2013 events. Neither party addresses this issue.

The statute requires both counseling *and* mediation before a lawsuit. *See* 2 U.S.C. § 1408(a). It is also not clear that Mr. Ham's complaint of a single-incident hostile work environment was part of the required mediation. The formal Notice of Invocation of Mediation from the Office of Compliance stated: "Mr. Ham formally requested counseling on July 23, 2013, alleging denial of reasonable accommodation, unfair evaluation, demotion, unfair terms and conditions, disparate treatment, and harassment because of race, age, color, disability, and retaliation . . . ," without identifying any relevant incidents on which such claims were based. Mediation Request at 1. Whether the professionals in the OOC used the term "harassment" to reference a claim of a "hostile work environment" is not clear and the parties have offered no comment or analysis.

The Court is not here to discover arguments neither party mentioned or addressed but it does need to have jurisdiction to decide anything. In this instance, the Court is reluctant to decide the viability of Mr. Ham's simple, but perhaps timely, allegation of a hostile work environment without notice to, and argument from, the parties.

## IV. CONCLUSION

For the reasons discussed above, the cross motions for summary judgment will be denied without prejudice and the parties will be directed to brief the following questions:[2]

1. Did Mr. Ham's request for counseling due to "harassment—hostile work environment" based on a single incident adequately raise a hostile work environment claim?

2. Was Mr. Ham's hostile work environment claim a part of the requested mediation, *i.e.*, has Mr. Ham fully exhausted his hostile work environment claim under the CAA?

3. If so, does that inclusion of a hostile work environment claim in July 2013 allow the Court to consider events that occurred after July 2013 as part of Mr. Ham's hostile work environment claim? In other words, are all of the "hostile" events alleged by Mr. Ham, both before and after July 2013, part of the same hostile work environment claim and, therefore, exhausted?

A memorializing Order accompanies this Memorandum Opinion.


Date: August 1, 2018                              /s/
                                         ROSEMARY M. COLLYER
                                         United States District Judge

---

[2] The parties are also directed to include dates or timeframes and citations to the record for every factual assertion made in their briefs.