UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONALD KAY HAM, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Civil Case No. 15-1390 (RMC) <br> ) |
| STEPHEN T. AYERS, In His Official <br> Capacity, Architect of the <br> Capitol, *et al.*, | ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

**MEMORANDUM OPINION**

Donald Kay Ham worked for the Architect of the Capitol as a sheet metal mechanic from 1991 to 2015. Mr. Ham now sues his former employer, alleging that he suffered a hostile work environment in violation of the Americans with Disabilities Act, made applicable to the Congress by the Congressional Accountability Act. The parties cross move for summary judgment, arguing over whether Mr. Ham's complaint of a hostile work environment was legally sufficient for the case he now wants to present.

On July 23, 2013, Mr. Ham filed a request for counseling with the Congressional Office of Compliance complaining of "harassment—hostile work environment" arising out of a single incident on July 17, 2013. In this Court, he has identified additional incidents contributing to the alleged hostile work environment that all occurred after July 2013, but which were never raised in counseling or mediation before the Congressional Office of Compliance.

The Court finds that Mr. Ham's initial complaint of a hostile work environment was infirm because it was based on a single disagreement with his supervisor. Without a viable complaint of a continuous, severe, and pervasive hostile environment as of July 23, the later

1

incidents of which Mr. Ham complains were not administratively exhausted and the Court is without jurisdiction to hear his case.

## I. FACTS

The facts have been previously discussed in two prior opinions by this Court, *see Ham v. Ayers*, 229 F. Supp. 3d 32, 34-36 (D.D.C. 2017) (*Ham I*); *Ham v. Ayers*, 318 F. Supp. 3d 296, 298-99 (D.D.C. 2018) (*Ham II*), and only those facts necessary to the current issue are recited.

Plaintiff Donald Kay Ham worked as a sheet metal mechanic for the Architect of the Capitol (AOC), a congressional office, between 1991 and 2015. *See* Def.'s Statement of Undisputed Material Facts (AOC SOF) [Dkt. 53] ¶¶ 1, 17. Mr. Ham alleges that he is an individual with a disability as defined by the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq*., which applied to his job with the AOC through the Congressional Accountability Act (CAA), 2 U.S.C. § 1301 *et seq*. Mr. Ham asserts that his supervisors knew that he suffered from various physical ailments that affected his work: he testified that he notified AOC that he suffered from sleep apnea when he first began working there in 1991, although he never sought an accommodation for it, *see* Ex. 1, Def.'s Renewed Mot. for Summ. J., Depo. of Donald Kay Ham (Ham Depo.) [Dkt. 53-1] at 69-70; and after a May 2007 examination by Washington Occupational Health Associates, Inc. (WOHA), Mr. Ham received a certificate indicating that his lung functions were abnormal, *see* Ex. 4, Pl.'s First Mot. for Summ. J., WOHA Employee Certification [Dkt. 44-5] at 1.

Under the CAA, an employee of Congress must first seek counseling on any Equal Employment Opportunity (EEO) complaint; failing a satisfactory resolution, the employee must seek mediation of his complaint(s); only then, after these steps are completed, can an employee bring suit. On July 23, 2013, Mr. Ham filed a Formal Request for Counseling with the

Congressional Office of Compliance. *See* Ex. 3, Pl.'s Opp'n to Mot. to Dismiss, Formal Request for Counseling (Counseling Request) [Dkt. 16-3] at 1. His Counseling Request identified the following complaints: discrimination due to race, color, age, and disability, unfair evaluation, demotion, and "harassment—hostile work environment." *Id*. at 1-2. The Counseling Request due to a hostile work environment identified a single incident on July 17, 2013, in which his supervisor refused to allow him to take a break and "threatened" him. *See id*. at 2 (alleging that Mr. Cole engaged in "harassment—hostile work environment—Mr. Cole would not allow me to take a break; Mr. Cole threatened me"). On or about September 11, 2013, Mr. Ham requested mediation. *See* Ex. 2, Pl.'s Opp'n to Mot. to Dismiss, Notice of Invocation of Mediation (Mediation Request) [Dkt. 16-2] at 1. The Mediation Request did not specify the issues Mr. Ham sought to mediate, but instead recounted the issues on which Mr. Ham had requested counseling in July 2013. *See id*. ("Mr. Ham formally requested counseling on July 23, 2013, alleging denial of reasonable accommodation, unfair evaluation, demotion, unfair terms and conditions, disparate treatment, *and harassment* because of race, age, color, disability, and retaliation, in violation of sections 201 and 207 of the Congressional Accountability Act." (emphasis added)).

Mr. Ham retired in July 2015, allegedly due to the harassment by his supervisors. *See* Ham Depo. at 75. He filed the instant Complaint on August 26, 2015 against Stephen T. Ayers, in his official capacity as the Architect of the Capitol. *See* Compl. [Dkt. 1]. Mr. Ham brought four counts against the AOC: (1) Discrimination Due to Disability; (2) Constructive Discharge Due to Violation of the ADA; (3) Hostile Work Environment; and (4) Retaliation. *See id*. ¶¶ 105-51. On May 17, 2016, the AOC moved to dismiss counts I, II, and IV on the grounds

that Mr. Ham had failed to complete the administrative processes of the CAA; this Court granted the motion on January 10, 2017. *See Ham I*, 229 F. Supp. 3d 32.

Following discovery, both parties moved for summary judgment and the Court denied both motions without prejudice, asking the parties to re-brief and focus on the question of whether Mr. Ham's hostile work environment was exhausted. *See Ham II*, 318 F. Supp. 3d 296. Both parties' renewed motions for summary judgment are now ripe.[1]

## II. LEGAL STANDARD

### A. Motion for Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is sufficient admissible evidence such that a reasonable jury could return a verdict for the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The party moving for summary judgment bears the initial responsibility of identifying portions of the record which demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (providing that the movant may cite to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials"). In response, the non-moving party must similarly designate

---

[1] *See* Def.'s Renewed Mot. for Summ. J. [Dkt. 53]; Pl.'s Revised Mot. for Summ. J. [Dkt. 55]; Mem. of P. & A. in Supp. of Pl.'s Mot. for Summ. J. (Ham Mem.) [Dkt. 55-1]; Def.'s Mem. of Law in Opp'n to Pl.'s Revised Mot. for Summ. J. [Dkt. 57]; Def.'s Resp. to Pl.'s Relevant Facts that are Not in Legitimate Dispute [Dkt. 57-1]; Pl.'s Reply (Ham Reply) [Dkt. 59].

specific facts in the record that reveal a genuine issue for trial. *See Celotex*, 477 U.S. at 324. On a motion for summary judgment, a court must analyze all facts and inferences in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, to the extent the non-moving party relies on conclusory assertions offered without evidentiary support, such assertions do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

### B. Congressional Accountability Act

The Congressional Accountability Act extended the protections of thirteen civil rights, labor, and workplace safety and health laws to the Congress and Legislative Branch agencies, including the AOC. *See* 2 U.S.C. §§ 1301(5), 1302(a). An employee covered under the CAA may commence a civil action "only to seek redress for a violation for which the employee has completed counseling and mediation." 2 U.S.C. § 1408(a); *see also Gordon v. Office of the Architect of the Capitol*, 750 F. Supp. 2d 82, 89-90 (D.D.C. 2010). An employee must make a request for counseling within 180 days of an alleged violation. *See* 2 U.S.C. § 1402(a). Therefore, before an employee may file a court complaint he must (1) make a request for counseling within 180 days of the alleged violation and (2) complete counseling and mediation for each alleged violation. *See Gordon*, 750 F. Supp. 2d at 92-93 ("This Court has also held that the completion of counseling and mediation for one set of violations does not give the court jurisdiction over related claims of retaliation that occurred after counseling had commenced; the administrative remedies must be exhausted for each claim."); *Halcomb v. Office of the Senate Sergeant-at-Arms*, 209 F. Supp. 2d 175, 177-79 (D.D.C. 2002) ("Because the language of the CAA provision at issue in this case clearly confers jurisdiction to this Court only if plaintiff has satisfied the administrative prerequisites to filing suit, the Court holds that

plaintiff's claim of retaliation must be dismissed for failure to exhaust her administrative remedies.").

### C. Hostile Work Environment

The Americans with Disabilities Act prohibits discrimination against "a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The CAA extended the ADA to the AOC. *See* 2 U.S.C. § 1311(a)(3). The D.C. Circuit has not yet addressed the question of whether a hostile work environment claim is available under the ADA, but the Court, like others before it, will not answer that question to determine the legitimacy of the underlying hostile work environment claim. *See Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 236 (D.C. Cir. 2018) (noting that the defendant "did not raise whether a hostile-work-environment claim is available under the ADA, a question that this Court has not yet decided and that we do not reach here"); *cf. Lanman v. Johnson Cty.*, 393 F.3d 1151, 1155-56 (10th Cir. 2004) (joining three other circuits in holding that the ADA's incorporation of language from Title VII shows Congress's intent to allow hostile-work-environment claims to proceed under the ADA). To establish a hostile work environment, an employee must allege facts sufficient to demonstrate that the harassment is "sufficiently severe or pervasive to alter the conditions of the victim's employment." *Durant v. Dist. of Columbia Gov't*, 875 F.3d 685, 700 (D.C. Cir. 2017).

> A plaintiff pleading a hostile work environment claim must show that he was exposed to "'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" To assess a claim of hostile work environment, the court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

6

*Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)). There is no bright-line test for a hostile work environment and a plaintiff need not show psychological harm or any specific adverse employment outcome. *See Harris*, 510 U.S. at 23. "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)).

### III. ANALYSIS

The CAA extends the protections of multiple federal workplace statutes, including the ADA, to employees of the Congress which includes the AOC. *See Hyson v. Architect of the Capitol*, 802 F. Supp. 2d 84, 89 (D.D.C. 2011). The CAA waives the sovereign immunity of the Legislative Branch and is, therefore, strictly construed. *See* 2 U.S.C. § 1408(a); *Lane v. Pena*, 518 U.S. 187, 192 (1996) (waiver of sovereign immunity will be strictly construed). As relevant here, a congressional employee must fully comply with the pre-litigation administrative process mandated by the statute before filing suit. *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 705-06 (D.C. Cir. 2009) (stating that "it is apparent from the plain terms of the [CAA's] text that Congress intended counseling and mediation to be jurisdictional requirements").

Mr. Ham recognizes that there is a three-step process under the CAA—consisting of filing a complaint, going through counseling, and requesting mediation—"that must occur prior to the filing of a complaint in federal district court . . . or a federal court has no jurisdiction to hear the case." Ham Mem. at 1-2. Critically, "the completion of counseling and mediation for one set of violations does not give the court jurisdiction over related claims of retaliation that

occurred after counseling had commenced; the administrative remedies must be exhausted for each claim." *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 66-67 (D.D.C. 2011) (quoting *Gordon*, 750 F. Supp. 2d at 92-93 (additional citation omitted)).

Mr. Ham's request for counseling due to a hostile work environment identified a single incident on July 17, 2013, in which his supervisor refused to allow him to take a break and "threatened" him. *See* Counseling Request at 2 (alleging that Mr. Cole engaged in "harassment—hostile work environment—Mr. Cole would not allow me to take a break; Mr. Cole threatened me"). Mr. Ham has identified other actions taken by his supervisors, which he believes contributed to the hostile work environment, which occurred after July 23, 2013 and which were not a part of the counseling and mediation conducted with the Congressional Office of Compliance. *See Ham II*, 318 F. Supp. 3d at 302 (quoting Mr. Ham's first motion for summary judgment where he admits the other acts occurred after July 2013). The relevant question, therefore, is whether the Court may consider events that occurred after the counseling and mediation—unexhausted events—in determining whether Mr. Ham has a valid claim of hostile work environment.

Mr. Ham contends that his complaint of a hostile work environment is not limited by the statutory period for filing claims and may include later events. Indeed, with respect to allegations of a continuing violation, such as a hostile work environment, the Supreme Court has held that "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). The context in which the Court was speaking was a record which showed discriminatory acts *prior to* the 180-day period for filing a charge as well as within the 180 days. *Id.* at 116-17. *Morgan*

8

allowed plaintiff to look backwards and include in a timely complaint incidents that would otherwise be time barred because "the 'unlawful employment practice' . . . occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Schmidt*, 826 F. Supp. 2d at 68 (quoting *Morgan*, 536 U.S. at 115).

Although *Morgan* only dealt with the consideration of instances that occurred prior to the statute of limitations period, Judges on this Court have also applied the rule to instances that occur after the initial EEO complaint has been instigated. *See Leach v. Nat'l R.R. Passenger Corp.*, 128 F. Supp 3d 146, 153-54 (D.D.C. 2015) (permitting inclusion of unexhausted claims because plaintiff's "hostile-workplace claim is 'like or reasonably related' to the allegations contained in her EEOC charge" (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995))); *Green v. Small*, No. 05-1055, 2006 WL 148740, at *7 (D.D.C. Jan. 19, 2006) (permitting plaintiff to use unexhausted claims of hostile work environment and citing *Morgan* for the proposition that "a hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice'"). However, in those instances in which a court has permitted the use of later acts to support a hostile work environment claim, the plaintiff's original—and exhausted—claim alleged an ongoing violation and the later acts were "adequately linked into a coherent hostile environment claim." *Ramsey v. Moniz*, 75 F. Supp. 3d 29, 56 (D.D.C. 2014); *see also Leach*, 128 F. Supp. 3d at 153-54 (requiring the later claims to be "like or reasonably related" to the allegations that were exhausted); *Green*, 2006 WL 148740, at *7 (noting the later allegations of sexual harassment were consistent with the allegation that the supervisor engaged in a "pattern of sexual harassment sufficient to create a hostile work environment").

Mr. Ham's case is distinguishable from the above instances when courts permitted later events to be considered after an exhausted claim. Mr. Ham's original Request for Counseling complained of a hostile work environment because on July 17, 2013 his supervisor did not permit him a break and threatened him. No further facts were provided and his Request did not allege an ongoing violation. "The purpose of the administrative exhaustion requirement is to ensure that an agency has notice of a claim and an opportunity to rectify the employee's complaint." *Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 92 (D.D.C. 2005) (citing *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985)). As the facts in the above-discussed cases make clear, the defendants had timely notice of an alleged continuous violation and so the purpose of administrative exhaustion was satisfied. Here, Mr. Ham identified only a single incident that he complained had created a hostile work environment. While he might individually have felt that his supervisor was "hostile" to him on that occasion, this single incident did not put the AOC on notice of an alleged continuing violation. Such notice is a requirement of the CAA before the Congress waives its immunity and an employee can sue. Thus, Mr. Ham's very limited Request for Counseling on July 23, 2013 cannot serve to render later incidents of alleged harassment actionable. And, since Mr. Ham did not exhaust his administrative remedies concerning the alleged hostile work environment after July 23, the Court is without jurisdiction to consider that claim or hear that evidence.

As the prior discussion presages, Mr. Ham's allegation of a hostile work environment as of July 23, 2013 cannot proceed to trial as a stand-alone allegation. A plaintiff asserting a hostile work environment claim under the ADA must establish: (1) that he is disabled or perceived as disabled; (2) that he was subjected to unwelcome harassment; (3) that the harassment occurred because of his disability; (4) that the harassment affected a term, condition,

10

or privilege of employment; and (5) that there is a basis for holding the employer liable. *See Floyd v. Office of Rep. Sheila Jackson Lee*, 85 F. Supp. 3d 482, 516-17 (D.D.C. 2015).

To prevail on such a claim, "a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch*, 550 F.3d at 1201 (quoting *Harris*, 510 U.S. at 21 (additional citations omitted)). "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id.* (citing *Faragher*, 524 U.S. at 787-88). "[N]o violation is present 'if the victim does not subjectively perceive the environment to be abusive' or if the conduct 'is not severe or pervasive enough to create an objectively hostile or abusive work environment.'" *Ware v. Hyatt Corp.*, 80 F. Supp. 3d 218, 226 (D.D.C. 2015) (quoting *Harris*, 510 U.S. at 21-22).

Single incidents are rarely severe or pervasive enough to constitute a hostile work environment. The D.C. Circuit has found that a single use of the "n" word addressed to an African American can suffice. *See Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013). Mr. Ham cites cases in which "a single physical act—such as a physical assault—can create a hostile work environment." Ham Mem. at 10 (citing *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1243 (10th Cir. 2001) (sexual assault); *Smith v. Sheahan*, 189 F.3d 529, 534 (7th Cir. 1999) ("extremely serious acts of harassment"); *Tomka v. Swiler Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995) (single incident of sexual assault)). Mr. Ham argues that he endured "numerous incidents of dangerous acts," *id*. at 10, and that he was "subjected to conduct that required him to work in dangerous environments, using dangerous techniques, deprived of necessary precautions

11

and subjected to daily insult, assault, and ridicule." Ham Reply at 6. However, all of this alleged behavior "occurred after July 2013, when Plaintiff filed his request for counseling." *Ham II*, 318 F. Supp. 3d at 302 (quoting Mr. Ham's first motion for summary judgment). Unfortunately, despite the Court's admonition to the parties "to include dates or timeframes and citations to the record for every factual assertion made in their briefs," *id*. at 303 n.2, Mr. Ham's renewed motion for summary judgment contains no citations to the record or dates upon which he alleges the "dangerous techniques" and "dangerous acts" occurred. Mere allegations without record support, such as these, do not create a genuine dispute over a material fact and are insufficient to overcome a motion for summary judgment. *Greene*, 164 F.3d at 675.

Thus, the only incident that is relevant to the alleged hostile work environment before Mr. Ham sought counseling on July 23, 2013 was the single occasion on July 17, 2013 when his supervisor refused to let him take a break and was threatening. This incident was neither "severe [n]or pervasive enough to create an objectively hostile or abusive environment," *Harris*, 510 U.S. at 21. The alleged violation of the Americans with Disabilities Act will be dismissed.

### IV. CONCLUSION

For the reasons discussed above, the government's motion for summary judgment will be granted and Mr. Ham's motion will be denied. A memorializing Order accompanies this Memorandum Opinion.

Date: March 14, 2019

ROSEMARY M. COLLYER
United States District Judge